# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| MIGUEL RADILLA-ESQUIVEL | § | |
| | § | |
| V. | § | A-17-CA-701-LY |
| | § | |
| LORIE DAVIS | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 9); and Petitioner's response thereto (Document 11). Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

### A.  Petitioner's Criminal History

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to several judgments and sentences out of the 427th District Court of Travis County, Texas in cause number D-1-DC-13-301688. Petitioner was indicted for six counts of aggravated sexual assault of a child, three counts of indecency with a child by exposure, and three counts of indecency with a

child by contact. He pleaded not guilty to each offense and on August 22, 2014, a jury found him guilty of two counts of aggravated sexual assault of a child and six counts of indecency with a child. After the jury found him guilty, the State waived three counts of the indecency with a child by contact. The jury assessed punishment at 50 years' imprisonment for each aggravated sexual assault offense, and 20 years for each indecency with a child by contact offense. The trial court ordered the sentences to run concurrently.

On June 15, 2015, the Third Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. Radilla-Esquivel v. State, No. 03-14-00544-CR, 2016 WL 4978565 (Tex. App. – Austin 2016, pet. ref'd). On January 11, 2017, the Court of Criminal Appeals refused his petition for discretionary review. Radilla-Esquivel v. State, PDR No. 1165-16. The Supreme Court denied Petitioner's petition for writ of certiorari on June 26, 2017. Radilla-Esquivel v. Texas, No. 16-9105, 137 S. Ct. 2310 (2017). Petitioner did not file a state application for habeas corpus relief.

**B.    Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below:

> The evidence shows that appellant lived with A.G. and her family at an apartment in Austin for about two years in 2006 and 2007. A.G.'s father testified that his sister had been married to appellant's brother and that he became "good friends" with appellant and let him rent a room in the apartment. He testified that he trusted appellant at the time and sometimes asked him to babysit A.G. and her siblings. A.G. was approximately six and seven years old during that time frame.
>
> In May 2013, A.G. made an outcry of sexual abuse to her father's girlfriend. She stated that appellant "put it in her" when he lived with her and her family several years earlier. Based on A.G.'s outcry, her father's girlfriend called the police, and A.G. was interviewed by a detective and a forensic interviewer and examined by a

2

doctor. A.G. told the forensic interviewer that appellant penetrated her sexual organ
and anus on more than one occasion. The detective interrogated appellant, who
ultimately made certain admissions about physical contact he had with A.G. when
he lived with her and her family.

Appellant was tried by a jury and convicted of two counts of aggravated sexual
assault of a child and six counts of indecency with a child. After the State waived the
three counts of indecency with a child by exposure, the jury assessed punishment on
the remaining convictions.

Radilla-Esquivel v. State, No. 03-14-00544-CR, 2016 WL 4978565, at *1 (Tex. App. – Austin 2016, pet. ref'd).

## C. Petitioner's Grounds for Relief

Petitioner argues he was denied his Sixth Amendment right to counsel when the trial court sustained the prosecutor's objections to defense counsel's closing argument. Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner raised this claim in his direct appeal proceedings.

## DISCUSSION AND ANALYSIS

## A. The Antiterrorism and Effective Death Penalty Act of 1996

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act. See Harrington v. Richter, 562 U.S. 86, 97–100 (2011). The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington, 562 U.S. at 98.

One of the issues Harrington resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." Id. Following all of the Courts of Appeals' decisions on this question, Harrington concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." Id. (citations omitted). The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." Id. (citing Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)). When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." Id. Even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." Id.

As Harrington noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable

4

determination of the facts" in light of the record before the state court. Id. at 100 (citing 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

Id. at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. Id.

**B.     Denial of Right to Counsel**

Petitioner alleges the trial court erred by preventing his attorney from arguing to the jury during closing the unfair interrogation method the police used to obtain his confession, i.e., his lack of education as well as that the interrogation method is illegal in other countries. Petitioner claims

5

when the trial court sustained the prosecutor's objections to defense counsel's argument, the court effectively denied his right to counsel and the right to argue highly probative evidence that went to the crux of the case.

Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. See Estelle v. McGuire, 502 U.S. 62, 67–68, (1991) (holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (recognizing federal habeas relief will not issue for errors of state law); Pulley v. Harris, 465 U.S. 37, 41 (1984) (holding a federal court may not issue the writ on the basis of a perceived error of state law). In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. Estelle v. McGuire, 502 U.S. at 67–68; Lewis v. Jeffers, 497 U.S. at 780; Pulley v. Harris, 465 U.S. at 41. When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."

Petitioner's allegations that the trial court erred in this regard have already been considered and rejected on direct appeal. The state appellate court determined any error on the part of the trial court was harmless. The court explained:

> In his twelfth and thirteenth issues, appellant contends that the trial court erred in sustaining the State's objections to two jury arguments defense counsel attempted to make during closing arguments. We review a trial court's ruling on the State's objection to appellant's jury argument under an abuse-of-discretion standard. See Davis v. State, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010); Garcia v. State, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); Thomas v. State, No. 05-14-01589-CR, 2016 WL 259761, at *6 (Tex. App.—Dallas Jan. 21, 2016, pet. ref'd) (mem. op., not

6

designated for publication). "The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement." Martinez v. State, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court has broad discretion in controlling the scope of closing argument, but prohibiting counsel from making a particular jury argument constitutes a denial of the defendant's right to counsel when that argument is one the defendant is entitled to make. Davis, 329 S.W.3d at 825; Johnson v. State, 698 S.W.2d 154, 166 (Tex. Crim. App. 1985); Riles v. State, 595 S.W.2d 858, 861 (Tex. Crim. App. 1980); Lemos v. State, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.).

The first jury argument at issue involved appellant's level of education, training, and experience as compared to that of the detective who interrogated him. The exchange among the attorneys and the court occurred as follows:

> Defense: The Reid technique is designed for one purpose and one purpose only, and that is to elicit a confession regardless of the facts of the case. And you can tell because he right away lies to him about DNA. He gives him this ridiculous answer, well, you know, that pen that you signed, like the pen that Mr. Moore is writing with, I took it back there and they analyzed it for DNA.
>
> And he says, well, I don't really know how long it takes to analyze DNA. For one, I think he's lying about that. He must know. He has to submit DNA all the darn time in cases he collects, so he's lying again. But I'll give him the benefit of the doubt and say he didn't know.
>
> But he doesn't know, and he expects a man of a modest education, with less training and experience than him, certainly—
>
> State: Objection. There's no evidence of that in this trial.
>
> Defense: It's obvious. It speaks for itself.
> ....
> Court: What is the statement at issue?
>
> State: He's talking about [appellant's], I guess, lack of education or something of that nature, and I'm just saying there's no evidence of that in this trial at all. He is talking about [appellant's] background.
>
> Court: I'll sustain the objection of the State. I'll instruct the jury to disregard the last remark of defense counsel.

The second jury argument at issue involved the technique the detective used to interrogate appellant. The exchange among the attorneys and court occurred as follows:

> Defense: Well, we have the Reid technique in full force now in the second interview. I mean, it is textbook. We know you did it, you know. We already know it happened. We already know it happened. We already know it's you. We don't have any other thing to talk about other than just tell us why you did it, just tell us why you did it. All the evidence says you did it. [Appellant] finally talks about [A.G.] coming to his room, but he says he never sexually assaulted her.
>
> Here's what we talked about all the way in voir dire. Remember we talked about why would somebody confess to something that they didn't do, why would somebody say something to incriminate themselves when they didn't do it. Why would they?
>
> I told you then that I didn't know the answer to that, but I think we see what the answer is, and it's there on my first—one of my PowerPoint slides at the beginning of voir dire. Police can lie, use techniques designed to elicit confessions, that they can rely on a technique that other countries don't allow to be employed.
>
> State: Objection, Your Honor, I don't think there's any evidence of that. There was a question asked, but the answer was never given. There's no evidence that other countries made any decisions about this Reid technique.
>
> Court: I'll sustain the objection.

The State concedes that the trial court erred in sustaining the State's objection to the second argument, as there was evidence in the record that other countries had stopped using the Reid technique, but contends that the trial court did not err in sustaining the State's objection to the first argument. Assuming, without deciding, that the trial court erred in sustaining the State's objections to both arguments, we must determine whether the error was harmful. See Tex. R. App. P. 44.2(a). Denial of the right to counsel is an error of constitutional magnitude. See U.S. Const. amend. VI; Tex. Const. art. I, § 10; United States v. DeLoach, 504 F.2d 185, 189–90 (D.C. Cir. 1974) (restrictions on defendant's closing argument violated constitutional right to counsel); Wilson v. State, 473 S.W.3d 889, 902 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). Because any error by the trial court in sustaining the State's objections would be constitutional, we apply rule 44.2(a) of the Texas Rules of Appellate Procedure, and we must determine whether the trial court's actions were

harmless beyond a reasonable doubt. See Tex. R. App. P. 44.2(a); Williams v. State, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997); Roop v. State, 484 S.W.3d 594, 602 (Tex. App.—Austin 2016, pet. ref'd). In applying the "harmless error" test, the primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction. Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

We must calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence. Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); Miles v. State, 918 S.W.2d 511, 517 (Tex. Crim. App. 1996). We consider the nature of the error, the extent to which it was emphasized by the State, its probable collateral implications, the weight a juror would likely place on the error, and any other considerations that may logically inform our analysis. Snowden v. State, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution." Wilson, 473 S.W.3d at 902. If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt. Wesbrook, 29 S.W.3d at 119. The presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. Id.; Moreno v. State, 858 S.W.2d 453, 466 (Tex. Crim. App. 1993). In conducting such a review, we must consider the "totality of the circumstances" by examining the record as a whole. See Miles v. State, 204 S.W.3d 822, 828 (Tex. Crim. App. 2006).

The two jury arguments at issue here are arguments defense counsel made to the effect that appellant was less educated and had less training and experience than the detective who interrogated him and that other countries did not allow the use of the interrogation technique used by the detective in this case. Appellant contends on appeal that the trial court's rulings sustaining the State's objections to the arguments were harmful because appellant's "purported confession" provided "critical corroboration" of the State's case and that by sustaining the objections, the trial court undermined appellant's argument that his interrogation produced a false confession and also resulted in "the court put[ting] its imprimatur of approval on the State's false factual assertion and unfairly bolster[ing] the purported confession's validity." We disagree that the trial court's rulings on the State's objection, if error, caused harm in this case. To begin with, appellant's contentions as to why the trial court's rulings caused harm primarily focus on the harm caused by the admission of evidence of appellant's interrogation, not the alleged harm caused by the trial court's rulings on appellant's jury argument. Appellant asserts that "[w]ithout appellant's statements, this was essentially a one witness case" and that "[t]he statements obtained from the interrogations . . . provided critical corroboration and fatally undermined the credibility of appellant's denials." However, the admission of evidence of the interrogation itself is not at issue.

9

To the extent that appellant argues that the trial court's rulings were harmful because they bolstered the validity of the interrogation, we are not persuaded. The arguments at issue were only a small portion of an otherwise extensive argument about the invalidity of the interrogation technique used by the detective. Specifically, eight pages of the trial-court transcript are taken up with defense counsel's arguments about the detective's lack of credibility and the invalidity of the technique used by the detective. Among defense counsel's arguments were the following:

> So Detective Torres then employs the Reid technique. I spent a lot of time on the Reid technique. I didn't know much about it before this trial, to be quite honest with you. But let me tell you something about the Reid technique. Make no mistake, it is the modern day rack of our time. It is a way to get somebody to tell you something that they wouldn't otherwise confess, a way to get an innocent person to tell you something that you want to hear. It is no different than strapping somebody on a rack and stretching them until they tell you or confess to something you're accusing them of. The only difference is it's not a physical sort of manipulation or torture, it is a mental one.
>
> ....
>
> Then [the detective] starts to lie. I mean, he presses his lies. Tell me about your DNA. Why is your DNA present if it's not? Classic Reid technique, right, because he's making up facts that don't exist to see if he can get him.
>
> ....
>
> Is that a fair and accurate way to get reliable information from someone, you lie to them about facts that don't exist and then have them explain it to you? Well, the DNA is there. How do you know? Heck, he could have said my DNA was there. How in the heck did my DNA get there, assuming I don't know and I'm not sophisticated to know that you can't test a pen in five minutes or 10 minutes?
>
> ....
>
> Dr. Carter, their own expert, talks about the Reid technique and the dangers of the Reid technique. Lying to the accused about evidence or suggesting you know the accused is guilty will not lead to reliable statements. He said you can't trust it.
>
> ....

> Then [the expert] said in one of my questions to him when I asked him about the mind being a tricky thing, he said if somebody is confronted with this kind of thing, they begin to feel trapped even if they're not in a cage or surrounded or otherwise repressed. You can feel trapped and you will say something to escape or to get it to stop. That's what he did.

With regard to the first argument at issue—appellant's alleged lack of education, training and experience as compared to the detective—appellant made a similar argument without objection in the above excerpt when defense counsel stated, "Heck, he could have said my DNA was there. How in the heck did my DNA get there, assuming I don't know and I'm not sophisticated to know that you can't test a pen in five minutes or 10 minutes?" Both the quoted argument and the argument at issue point out that the detective lied about having appellant's DNA and suggest that the detective took advantage of a person with less knowledge or sophistication than him. Thus, appellant was allowed to make the point he wanted to make. Further, appellant argued at trial and argues on appeal that his lack of education, training, and experience is evident from the record. Specifically, after the State objected to defense counsel's characterization of appellant, defense counsel argued, "It's obvious. It speaks for itself." On appeal, in asserting that the trial court erred in sustaining the State's objection, appellant contends that "[i]t is obvious from the record appellant had neither college [n]or any relevant specialized training or knowledge. The evidence showed appellant was about 42 years old, had come to this country from Mexico, and worked construction his entire life." A review of the record confirms that evidence of appellant's general background was admitted at trial. In addition, as detailed in earlier issues above, the record contains extensive evidence to support appellant's convictions, including testimony from A.G. and the forensic interviewer.

Given appellant's lengthy critique without objection of the detective's interrogation technique, including a critique of the detective taking advantage of a less-knowledgeable suspect, the other evidence of appellant's background admitted without objection, and the considerable evidence of appellant's guilt of the offenses for which he was convicted, we conclude beyond a reasonable doubt that the trial court's ruling sustaining the State's objection and instructing the jury to disregard defense counsel's argument about appellant's lack of education, training, and experience, if error, was not harmful. See Wesbrook, 29 S.W.3d at 119 (presence of overwhelming evidence supporting finding in question can be factor in evaluation of harmless error); Foreman v. State, No. 08-13-00042-CR, 2015 WL 129025, at *5 (Tex. App.—El Paso Jan. 9, 2015, no pet.) (not designated for publication) (prosecutor's argument to jury was harmless where prosecutor made similar argument later in closing arguments with no objection); Culton v. State, 95 S.W.3d 401, 406-07 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (error in sustaining

State's objection to appellant's closing argument was cured because appellant made essentially same argument later without objection).

Regarding the second argument at issue—the argument that other countries did not allow the use of the interrogation technique used by the detective in this case—we note at the outset that the trial court did not instruct the jury to disregard the argument. Thus, the jury heard the argument and was allowed to take it into consideration. Further, the record shows that a psychologist who testified for the State testified affirmatively as to the substance of the argument without objection during trial. Specifically, the following exchange occurred:

> Defense: In fact, we're learning quite a bit about police interrogation techniques and whether—and the production of false confessions. In fact, other countries have even stopped using one of the more popular techniques in the United States called the Reid technique; is that correct?
>
> Psychologist: Yes.
>
> Defense: Finding that often the rates of a false confession are pretty high when you use that technique, right?
>
> Psychologist: Yes.

In addition, defense counsel provided a lengthy critique of the Reid technique without objection as set forth in excerpts above, thus presenting considerable other arguments about the unreliability of the technique. We also note once again that the record contains extensive evidence supporting appellant's convictions as set forth in earlier issues above.

Considering that the trial court did not instruct the jury to disregard the argument, that the psychologist testified affirmatively elsewhere without objection to the substance of argument, that the defense argued extensively elsewhere without objection about problems with the interrogation technique used by the detective, and that there was considerable evidence of appellant's guilt of the offenses for which he was convicted, we conclude beyond a reasonable doubt that the trial court's ruling sustaining the State's objection to the second jury argument at issue, if error, was not harmful. Cf. Wesbrook, 29 S.W.3d at 119; Mayes v. State, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) ("[T]he admission of [one witness's] testimony without objection rendered the admission of [a second witness's] testimony harmless because it established substantially the same evidence."); Anderson v. State, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) ("Inadmissible evidence can be rendered harmless if

other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove.").

Because we conclude that the trial court's rulings sustaining the State's objections, if error, were harmless, we overrule appellant's twelfth and thirteenth issues.

As explained above, in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A petitioner is thus entitled to federal habeas relief due to trial error only if such error had a substantial and injurious effect or influence on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993).

> [U]nder Brecht, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the Brecht standard, of the error, then we must conclude that it was harmful.

Mayabb v. Johnson, 168 F.3d 863, 868 (5th Cir. 1999) (quoting Woods v. Johnson, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him. Brecht, 507 U.S. at 637.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Petitioner has not demonstrated prejudice or shown a substantial and injurious effect on the jury's verdict. As explained by the state court, the trial court's rulings sustaining the State's objections, if error, were harmless.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

# CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

**OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED this 7th day of December, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE